## MINDNICH ET AL. v. KLINE ET AL.

[No. 5,781.   Filed June 6, 1906.]

WATERS AND WATERCOURSES.—Obstructions.—Nuisance.—Drains.
—A judgment in a drainage proceeding is no defense to a suit to enjoin the maintenance of a dam in a watercourse, which has been running in a regular channel between well-defined banks from time immemorial, where such portion of such stream was not obliterated, superseded or deprived of its character as a natural watercourse by such judgment.

From Wabash Circuit Court; A. H. Plummer, Judge.

Suit by Mary E. Kline and others against Martin Mindnich and others.   From a decree for plaintiffs, defendants appeal.   Affirmed.

Spencer & Branyan, for appellants.

John Q. Cline, Claude Cline and Samuel E. Cook, for appellees.

BLACK, J.—This was a suit brought by the appellees against the appellants for damages because of the construction of two certain dams in the Little Wabash river, for the abatement of the obstructions, and for a decree perpetually enjoining the appellants from so obstructing the river.

The facts are shown by special findings.   Appellee Mary E. Kline was the owner in fee simple of certain described real estate in Huntington county, being 107 acres bordering the south side of said river, less than one-half mile above, or up the stream from, the lands of the appellants hereinafter mentioned.   Appellee Bridget Roche was the owner in fee simple of certain other lands, being eighty acres bordering the south side of the river, likewise less than one-half mile above the lands of the appellants. From time immemorial the Little Wabash river has been, and it still is, a natural watercourse, extending from a point five or six miles southwest of the city of Ft. Wayne, Allen county, in a southwesterly direction through that county and Huntington county, and along and through the

lands of the appellees and the appellants, until it empties into the Wabash river at a point about two miles southwest of the city of Huntington. The Little Wabash river always has been and is a stream and watercourse with a natural, distinct, and well-defined channel, with natural bed and banks from its head to its mouth. Along the lands of the appellees and of the appellants, as well as at other places above and below them, the river is from 125 to 150 feet wide. The lands of the appellees are level and flat, and they require drainage, and the river is the only outlet for the drainage thereof. A number of small streams and ditches pass through them and empty into the river, and the appellees have constructed numerous lateral open ditches and tile-drains for the drainage of their lands, and these empty into said small streams and ditches. All of the lands have rich soil and produce corn, wheat, oats and grass.

The appellants are the owners of certain lands lying on the north and south sides of the river, and extending across it, and including an island below the lands of the appellees. The island is located in the river opposite the other lands of the appellants, and is about fifty yards wide and one hundred and fifty yards long. At the island the channel of the river divides into a south branch and a north branch, the former channel being about seventy-five feet wide, running along the south side of the island, and the north branch being a channel about thirty feet wide, running along the north side of the island. From time immemorial both of these branches have been, and they now are, natural watercourses, and parts of the river, with natural and well-defined channels and beds and banks, and necessary to hold, contain and convey the water which naturally flows in the river and passes at that place.

July 1, 1883, one Branstrater and others filed in the Superior Court of Allen County a petition, under the drainage laws of this State, for the location and construc-

tion of a ditch or drain in and along the Little Wabash river, and such proceedings were had in that court in said cause that a ditch or drain was established and afterward constructed in and along the river from a point in Allen county to a point in Huntington county about two miles below and down stream from these lands of the appellees and the appellants. The bed of the river at and along the lands of the appellees and the appellants, and in both of the channels at the island, and for two miles below it, was and is composed of limestone rock. It was provided in said proceedings that the ditch should be about thirty feet wide in the bottom and about forty feet wide at the top, at and along this island, and the ditch was constructed of such width at that point. It was located along the north bank of the river for a mile or more below the island, and at the island it was continued along the north bank and in and along said north channel. After its construction there remained over seventy-five feet of the old channel of the river for a mile below the island, and at the island said south channel was left open and unobstructed, and the remainder of the natural channel below the island, as well as all of the channel on the south side of the island, was and is required and necessary to hold, carry and convey the water which naturally collects and flows in the river at that place.

The judgment of the Superior Court of Allen County does not limit the river to said artificial ditch, but "it was the intention of said court that said old channel above and below said island should be left open and unobstructed, and that all of said old channel on the south side of said island should remain open and unobstructed and as a part of said river; and that the object of said proceedings in said court was to enlarge said river at said island and at other points above and below the same." The lands of the appellees and of the appellants were assessed for the construction of said artificial ditch. For several years after the construction of the artificial ditch the old channel on the south side

of the island remained open and unobstructed, as a part of the river, and was used to hold and carry the water passing in the river at that place.

After the construction of the artificial ditch, appellant Mindnich became the owner of the island and the other land to the north and south of it bordering on the river, and thereafter he opened up a stone-quarry in the river, in the bed of the channel south of the island and opposite the lower end thereof. He also entered the river and constructed a permanent dam across the south channel at the east or upper end of the island and at the west or lower end thereof. These dams were constructed of stone, dirt and other material; the upper one extending from the upper end of the island to the south bank of the river, a distance of about seventy-five or eighty feet, and being from six to seven feet high and completely closing up the south channel, so that the natural flow of the water of the river cannot pass through that channel, and the lower one extending from the lower end of the island to the south bank of the river, and both of the dams are as high as the banks of the river at said points. The dams were constructed by Mindnich for the purpose of keeping out of the south channel water that would naturally pass through it, and of preventing such water from passing through it, in order that he might operate the stone-quarry in the bed of the river.

Afterward the other appellant, the Huntington Consolidated Lime Company, purchased an interest in the stone-quarry and the land above mentioned, and both of the appellants have since been maintaining, and from time to time enlarging, the dams. By the construction and maintenance of the dams the appellants have reduced and taken away one-half of the size of the natural capacity of the river at the island. The artificial ditch on the north side of the island is wholly insufficient to hold and to carry the water which must pass at that point. The dams obstruct, greatly impede and check the natural flow of the water

and the current of the river at the island, and cause the water to congest, accumulate and back up at and above that point, by reason whereof the water of the river above the island is caused to rise above the banks thereof, and it spreads over the lands and fields of the appellees and floods and overflows the same, and is caused to stand and remain on said lands and fields, and thus to damage and destroy the wheat, grass and corn of the appellees, and the water in the river is caused to rise above the level of said small streams and ditches on the lands of the appellees, and the water backs therein and thus destroys the outlet for said lateral drains. It was found that the water backing up and flooding these lands had damaged grass, wheat and corn on the land of the appellee Kline of the value of $10, and on the land of the appellee Roche of the same value. The court stated as conclusions of law that the appellants had no right to construct and maintain the dams in the south channel of the river; that the construction and maintenance thereof constituted a nuisance, and the appellees were entitled to have the same removed and abated within ninety days, and to have judgment against the appellants—the appellee Kline for $10, and the appellee Roche for the same amount; also, that the appellants should be perpetually enjoined from obstructing the south channel of the river at the island; and that the appellees should recover their costs.

The court's conclusions seem so satisfactory and necessary, as being in accordance with principles firmly established and well understood, that there would be no occasion for discussion but for the claim on the part of the appellants that, as a result of the proceedings and judgment in the drainage proceedings in the Superior Court of Allen County, the south channel closed up by dams should be regarded as no longer being a portion of the river, and that the intervening space between the island and south shore of the river, inclosed between the two dams, should be

treated as land reclaimed through the drainage proceeding. This claim on the part of the appellants cannot be sustained. Leaving out of consideration all of the finding which may be said to constitute conclusions of law, there are sufficient facts to show that the portion of the river in question was not obliterated or superseded or deprived of its character as a natural watercourse by the drainage proceeding. It existed as such when the appellants became landowners in that locality, and when for their own private gain they constructed the obstructions, which constituted a nuisance, being an interference with the comfortable enjoyment of the lands of the appellees, which the court below rightly would not tolerate when its aid was properly invoked.

Certainly, it appears from the findings that the dams were erected in and across a place where the river had immemorially flowed as a natural watercourse, and the drainage proceedings shown in the findings do not appear therein to have changed the character of the place as a channel of such a stream and part of a river, whose waters the appellants had no right, by their obstructions, to cause to overflow the lands of the upper proprietors. Those proceedings, as appearing in the special findings, constituted no sufficient defense for the acts of the appellants shown by the findings.

Judgment affirmed.